UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RENA TRIANO,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No.  2:25-CV-00025-CKD

ORDER

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  The parties have consented to magistrate judge jurisdiction for all purposes, including entry of judgment.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

       Plaintiff, born in 1962, applied on August 31, 2021 for DIB, alleging disability beginning April 23, 2018.  Administrative Transcript ("AT") 35, 293.  Plaintiff alleged she was unable to work due to stage two breast cancer, multiple sclerosis, side effects of chemotherapy, brain fog, pain, and fatigue.  AT 294.  In a decision dated February 16, 2024, the ALJ determined that

1

plaintiff was not disabled.[1]  AT 35-45.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 23, 2018 through her date last insured of December 31, 2020.
>
> 3. Through the date last insured, the claimant had the following severe impairments: multiple sclerosis, degenerative disc disease of the lumbar and cervical spine, gastroesophageal reflux disease, irritable bowel syndrome, and migraines.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically

---

[1]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520,  404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except: she could have lifted 20 pounds occasionally and 10 pounds frequently; she could have sat for 8 hours per 8-hour workday; she could have stood and/or walked for 4 hours per 8-hour workday; she could have occasionally performed postural activities except she was unable to climb ropes, ladders, or scaffolds; she could have frequently reached overhead; she could have occasionally operated foot controls; and she must have avoided concentrated exposure to extreme heat, wetness, humidity, vibration, and hazards such as working at unprotected heights and operating heavy machinery.

6.  Through the date last insured, the claimant was capable of performing past relevant work as an accountant, a budget accountant, and a tax accountant.

7.  The claimant has not been under a disability, as defined in the Social Security Act, at any time from April 23, 2018, the alleged onset date, through December 31, 2020, the date last insured.

AT 37-45.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in discounting plaintiff's subjective symptom testimony of pain and physical dysfunction; (2) the ALJ erred in failing to include mental restrictions in the residual functional capacity (RFC); and (3) the ALJ erred in finding that plaintiff performed her past relevant work long enough to learn the necessary skills to perform the job in the current economy.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Subjective Symptom Testimony

Plaintiff claims that the ALJ erred in discounting her subjective testimony of pain and physical dysfunction during the relevant period of April 2018 to December 2020. The ALJ found that there was evidence consistent with plaintiff's allegations, including her diagnosis of and treatment for multiple sclerosis. AT 41; see AT 546-57 (noting 2014 diagnosis of MS after brain MRI), AT 550 (noting MRIs of the brain and cervical spine in 2016, 2018, and 2020 consistent with history of MS). However, the ALJ found plaintiff's allegations "not entirely consistent with the evidence" when considering the standard factors in a credibility assessment. AT 41.

1. Plaintiff's Testimony

At the January 2024 hearing, plaintiff testified that she had held multiple jobs as an accountant. AT 245-246. In April 2018, she was working part-time due to her symptoms, but she "got wrote up for a lot of things" and could not perform the job. AT 247, 256-57. Plaintiff testified that her work problems were related to an inability to focus due to brain fog and fatigue from MS. AT 257.

The ALJ summarized plaintiff's physical symptom allegations as follows:

> The claimant alleges that she has intense fatigue and pain with burning sensations in her limbs that is worsening. She no longer rides horses as a hobby. She estimates that she could lift and carry 5 pounds, sit for half an hour, and walk for half an hour. She has difficulty walking due to the fatigue. She naps during the day. She has difficulty reaching. She has grab bars in her shower and she makes use of a grabbing device. She has difficulty driving long distances due to the fatigue. Her husband does the cooking and yardwork. She has migraines every few months.

AT 41; see AT 244-267 (hearing testimony).

The ALJ summarized plaintiff's mental symptom allegations as follows:

> The claimant alleges she has brain fog and problems concentrating. She has difficulty organizing her thoughts and functioning. She is depressed and reclusive. She would be unable to complete her own taxes now even though she used to work as an accountant. She received poor performance reviews about her work due to needing instructions repeated, inconsistent performance, difficulty focusing, and being tardy.

AT 38; see AT 244-267 (hearing testimony).

### 2. Legal Standard

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).

When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78.  This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"  Lambert, 980 F.3d at 1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility.  Id. at 1277–78.

3.   Discussion

The ALJ found plaintiff's multiple sclerosis, lumbar and cervical disc disease, and digestive ailments to be severe impairments.  AT 37.  In assessing credibility, the ALJ reviewed the objective medical evidence consistent with these impairments.  AT 41.

However, the ALJ found plaintiff's symptom allegations "not entirely consistent with the evidence."  AT 41.  Plaintiff's claim focuses on her allegations of "pain and physical dysfunction," so the court reviews the ALJ's reasoning on those issues.

In his credibility discussion, the ALJ cited numerous pieces of evidence suggesting that plaintiff's pain and physical health problems had improved with treatment.  AT 41-42, citing, e.g., AT 822 (2018 report that cortisone injection helped right hip pain), AT 813 (2018 report that chiropractic care helped headaches), 798 (2018 report that burning in extremities had improved with Cymbalta), 779 (2019 report that migraines were stable and responded to medication), 632 (2021 report that insomnia was controlled with medication; also noting that plaintiff was walking

6

5,000 steps a day and doing Pilates twice a week and treadmill once a week).

The ALJ noted that, in January 2020, plaintiff's medical provider stated that, with infusions every six months since July 2017, "she was doing well overall without any new . . . neurological symptoms suggestive of clinical relapses . . . [and] her last set of MRIs [in 2018] showed no evidence of new or active disease[.]"  AT 42, citing AT 728-729.  Plaintiff argues that MRIs showing that her MS was stable with injections "does not equate with being symptom-free."  (ECF No. 11 at 8.)  However, the ALJ considered the MRI evidence along with multiple other sources of evidence, including plaintiff's self-reports and activities, when assessing her symptoms and limitations.

Along with weighing evidence from the key time period of April 2018 to December 2020, the ALJ found that plaintiff's allegations were not "entirely consistent with the evidence after the date last insured" of December 31, 2020.  AT 43, citing, e.g., AT 603-604 (July 2021 note that plaintiff reported that "her overall health is pretty good"; her pain and depression were managed by medication; and though she had "significant fatigue" and took naps, she was "functionally not limited.").  Plaintiff's self-reported condition "shortly after the date last insured" was an appropriate consideration in the credibility analysis.  See AT 43.

The ALJ's also considered plaintiff's activities during the period of alleged disability.  The ALJ noted that, in June 2018, plaintiff reported that she was caring for her mother with dementia.  AT 42, citing AT 817.  The ALJ also noted that "[d]espite her allegations, . . . [in August 2018 she] went paddle boarding and ice skating."  AT 42, citing AT 813.  Plaintiff argues that this note was ambiguous as to time, with these activities perhaps occurring in the 1970s.  (ECF No. 11 at 9.)  The medical note states in full: "Paddle boarded and was okay better than her husband in 70's.  Also did ice skating."  AT 813.  Its most straightforward reading is that plaintiff had recently gone paddle boarding and ice skating.[2]  While such recreational activities are only a snapshot of physical abilities, they reasonably may be seen as inconsistent with plaintiff's alleged severe physical limitations.  See, e.g., AT 251 (hearing testimony that, from 2018 to 2020, the

---

[2] From the text of the note, it appears that plaintiff stated she was better at paddle boarding than her husband, who was in his seventies.

most strenuous physical activity plaintiff could perform was "housework").  Prior inconsistent statements are an appropriate factor to consider in assessing credibility.

In May 2020, the ALJ noted, plaintiff was described as "doing wonderfully with no symptoms or episodes of palpitations, and she reported that she was staying active riding her horse."  AT 42, citing AT 711.  Plaintiff argues that this medical note was made during a cardiology visit concerning heart palpitation, not MS symptoms.  See AT 711.  However, plaintiff's physical examination at that medical visit was largely normal.  See AT 712-713.  The ALJ reasonably concluded that the May 2020 evidence was not entirely consistent with plaintiff's testimony about physical limitations, e.g., that she could only sit for half an hour, walk for half an hour, and had difficulty walking.  See also AT 41 (ALJ's finding that, "although the claimant has presented with positive physical examination findings, she has also presented with no gait changes, grossly intact balance and coordination, and instances of grossly intact strength and sensation in the lower extremities.") (record citations omitted).

Overall, the ALJ sufficiently explained his reasoning in the credibility analysis, supported by substantial evidence.  Because the ALJ used the proper process and provided proper reasons, the court defers to his discretion on the issue of credibility.

B.  Mental Limitations

Plaintiff next claims that the ALJ erred by failing to include mental limitations in the RFC.  Plaintiff argues that the ALJ's finding of mild mental limitations "should have translated into at least *some* mental work restrictions with regard to her capacity for complex work" and that this error was harmful given the ALJ's finding that plaintiff could perform past skilled work as an accountant.  (ECF No. 11 at 12) (emphasis in original).

At step two, the ALJ found plaintiff did not have a severe mental impairment under the applicable de minimis standard.  AT 38; see Glanden v. Kijakazi, 86 F.4th 838, 844 (9th Cir. 2023) ("[A]n ALJ may find an impairment or combination of impairments 'not severe' at step two *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.") (emphasis in original) (citing Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)).  The ALJ considered opinion evidence as to mental limitations, including

8

opinions from the State agency's medical consultants, both of whom found that plaintiff had no severe mental impairment.  AT 38, citing AT 274-291, 293-310.

Regardless of the step two findings, the ALJ was required to consider all impairments—severe and non-severe—in his RFC analysis.  Buck v. Berryhill, 869 F.3d 1040, 1048–49 (9th Cir. 2017)).  As the Ninth Circuit explained,

> step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.

Buck, 869 F.3d at 1049 (cleaned up).  Thus, the court turns to whether the ALJ considered the limitations imposed by plaintiff's mental impairments when determining the RFC.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons.  20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).  When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]"  20 C.F.R. §§ 404.1545(a)(4).

Here, the ALJ considered evidence relating to fatigue, headaches and dizziness.  AT 41-42.  The ALJ noted that, in February 2019, plaintiff "demonstrated a normal mental status examination"[3] and her neurology specialist stated that she was "minimally asymptomatic."  AT 42, citing AT 791-795.  The ALJ noted that, in January 2020, plaintiff was "doing well overall without any new focal persistent neurological symptoms[.]"  AT 42, citing AT 728.  The ALJ considered evidence that plaintiff's insomnia, migraines, and fatigue were improved with

---

[3] Specifically, plaintiff's mental state, memory, attention and concentration, fund of knowledge, and language use were found to be normal in February 2019.  AT 791-92.

medication.[4]  AT 41-42.  The ALJ also considered longitudinal evidence of mental impairment, including an October 2019 neuropsychological evaluation in which plaintiff "performed within the average range for all cognitive domains and a cognitive diagnosis was not warranted."  AT 38, citing AT 764-774.

While plaintiff asserts that the RFC should have included "at least some" mental work restrictions, she does not explain what specific restrictions the ALJ should have included based on the evidence.  The court concludes that plaintiff's assessed mental RFC was adequately explained and grounded in substantial evidence.

C.  Past Relevant Work

Lastly, plaintiff asserts that the ALJ erred at step four in finding that she could perform three types of past relevant work as an accountant.  Plaintiff argues that her past jobs do not meet the durational requirement of "past relevant work" and that she did not do them long enough to be able to perform the jobs in the current economy.

At the hearing, plaintiff testified that she formerly worked as an accounting manager who managed five people, then as an accounting supervisor who oversaw two or three people, and then an accounting technician.  AT 245-247.  These jobs included experience in audits, day-to-day financials, accounts payable, project accounting, grant accounting, and reconciling accounts.  AT 245-247.

The ALJ found that plaintiff had past work as an accountant, a budget accountant, and a tax accountant.  AT 44.  The ALJ continued:

> This past work constitutes past relevant work because it satisfies the three requirements of 20 CFR 404.1560(b)(1).  First, the claimant stated that she performed this work within the fifteen years prior to the date last insured.  Second, earnings records show that the claimant performed this work at the substantial gainful activity level over her reported dates of employment.  Finally, the claimant reported dates of employment that show that she performed this work for a duration to learn the job duties.[5]

[4] As to depression, plaintiff stated at the hearing that depression was not "part of the problem with [her] mental functioning" during the two-year period at issue.  AT 266.

[5] Because plaintiff's application was filed before the effective date of the revised regulations governing past relevant work, June 22, 2024, the prior rules for evaluating past relevant work

10

AT 44 (record citations omitted).  The ALJ concluded that plaintiff was capable of performing past relevant work "as an accountant, a budget accountant, and a tax accountant."  AT 44.

Plaintiff takes issue with the ALJ's finding that she performed these jobs for a sufficient duration.  Her work history report states that she performed one accounting job from March 2002 to May 2008; the next from December 2008 to December 2011; and the third from June 2016 to April 2018.  AT 439.  Plaintiff points out that, as defined by the Dictionary of Occupational Titles ("DOT"), all three jobs have an SVP of 8, reflecting that a job requires over 4 years and up to 10 years for a typical person to achieve average performance.  See Program Operations Manual System (POMS) Medical and Vocational Reference Guide, DI 25001.001(A)(78).  Plaintiff also points that, in the 15 years prior to the date last insured (i.e., since January 1, 2006), she did not perform any one job for at least four years.  See 20 C.F.R. § 404.1565(a) (work experience "applies when it was done within the last 15 years . . . The 15-year guide is intended to insure that remote work experience is not currently applied.").  Plaintiff argues that, because she did not do one job for a four-year period in the last 15 years, she does not meet the durational requirement for skilled work as an accountant.

Plaintiff's analysis fails to account for the fact that she has a bachelor's degree in accounting.  AT 244.  According to POMS, "a four-year college degree is equal to two years of SVP."  POMS, DI 25001.001(A)(78).  If two years are added to plaintiff's three-year job from 2008 to 2011, it equates to five years of training, sufficient to achieve average performance in that job.[6]  Moreover, in addition to a college degree, plaintiff has a nine-year work history of supervising other accountants, which suggests she has sufficient experience to do accounting work in the current economy.  Plaintiff has not met her burden to show that the durational requirement for past relevant work is not met.  See 20 CFR § 404.1512 (a)(2)(ii).  Defendant is entitled to summary judgment on all claims.

///

---

apply.

[6] As long as plaintiff could perform one type of past relevant work, any error is harmless as to the other two types.

11

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is GRANTED; and

3. Judgment is entered for the Commissioner.

Dated:  March 4, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE